# CASES

## IN THE

# APPELLATE COURTS OF ILLINOIS.

## THIRD DISTRICT—NOVEMBER TERM, 1892.

## Toledo, St. L. & K. C. R. R. Co. v. Clark.

1. *Railroads—Negligence—Construction.*—As a question of fact a jury may well consider a frog-like arrangement of a rail, movable by a switch, on a city sidewalk, a faulty construction, and having a space between the fixed rail and the planking sufficient to catch and hold the foot of a person passing over it, culpable negligence.

**Memorandum.**—Action for personal injuries. Appeal from the Circuit Court of Coles County; the Hon. Francis M. Wright, Circuit Judge, presiding. Heard in this court at the November term, A. D. 1892, and affirmed. Opinion filed March 6, 1893.

The opinion of the court states the case.

APPELLANT'S BRIEF, WILEY & NEAL, ATTORNEYS, CLARENCE BROWN, OF COUNSEL.

For the plaintiff to maintain this action it must appear that at the time of the accident he was exercising ordinary care for his own safety. C., B. & Q. R. R. Co. v. Thomas L. Johnson, 103 Ill. 512; C. & N. W. R. R. Co. v. Sweeney, 52 Ill. 325; Galena & C. U. R. R. Co. v. Jacobs, 20 Ill. 478; C., B. & Q. v. Hazzard, 26 Ill. 373.

A party can not speculate on his life and try chances of passing before a moving engine. W., St. L. & P. Ry. Co. v. Weisbeck, 14 Brad. 525.

It has been repeatedly held by our Supreme Court that it is negligence such as to preclude a recovery, for a person to step onto a railroad track without looking to see if a train be approaching. C. & N. W. Ry. Co. v. Dimick, 96 Ill. 42; C. & A. R. R. Co. v. Robinson, 9 Brad. 89; St. L., A. & T. H. R. R. Co. v. Pflymacher, 9 Brad. 300; C., B. & Q. R. R. Co. v. Damerell, 81 Ill. 450; C. & R. I. R. R. Co. v. Still, 19 Ill. 499; G. & C. U. R. R. Co. v. Dill, 22 Ill. 265; C. & A. R. R. Co. v. Gretzner, 46 Ill. 82; T. P. & W. R. R. Co. v. Riley, 47 Ill. 515; St. L., A. & T. H. R. R. Co. v. Manly, 58 Ill. 300; C. & A. R. R. Co. v. Jacobs, 63 Ill. 179; C., B. & Q. R. R. Co. v. VanPatten, 64 Ill. 516.

APPELLEE'S BRIEF, HUGH & HAYES, ATTORNEYS.

It is a rule of law, that by a verdict of a jury upon a question of fact alone, when fairly submitted, the successful party obtains certain rights, which are recognized by the law, and that such verdict must stand, although it may appear to be against the weight of the evidence, unless it is apparent upon the face of the record that the jury were actuated by passion or prejudice. Shelton v. O'Riley, 32 App. 641; Plummer v. Rigdon, 78 Ill. 222; Miller v. Balthasser, 78 Ill. 305; L. E. & W. Ry. v. Zoffinger, 107 Ill. 202.

OPINION OF THE COURT, PLEASANTS, P. J.

Appellee recovered judgment below on a verdict for $1,000 damages for the loss of his right foot, charged to have been caused by the negligence of appellee.

He was a single man, thirty-one years of age, residing six miles west of the city of Charleston. He went to the city on the morning of December 10, 1890, and spent the day there. About nine o'clock in the evening, on his way to take the train for home, while passing over the track of appellant on the sidewalk of Railroad street, an engine, coming from the shops, in charge of an assistant hostler as engineer and a man who worked about the shops as fireman, ran upon him and crushed his foot, which had to be amputated. He was going by the usual route from the public square to the depot.

The street runs east and west, parallel with the track of the I. & St. L. Ry. and nearly parallel with that of appellant, which runs northeast and southwest, crossing the former at a point east of the place of the accident, variously stated by the witness at eighty to a hundred and thirty feet, and the south sidewalk, diagonally, at a small angle. Appellant was walking west, carrying two bundles. His statement is, that when a few steps from the crossing, he looked north and saw the engine, then about at the crossing of the I. & St. L. track, and supposing it was moving on that track, did not look to see it again until, walking on, his foot was caught and held, beyond his power to extricate it, in a hole between appellant's south rail and the planking on its north side. The engine was moving without any headlight, at a rate of four to five miles an hour. Appellee says he heard no bell, or other warning of it. He thinks his foot went into the hole six inches. He st‿ted that he had passed over that crossing a hundred times, probably, but never noticed it particularly, or that there was anything wrong about it; that if he had seen the hole he could easily have stepped over it, and that if he had not stepped into it, he would have passed the crossing in ample time to avoid the collision.

On behalf of the defense it was claimed and evidence offered tending to prove that the bell was ringing; that the engine was moving, for some distance before it reached the sidewalk, so nearly along side of him that if he had turned his eyes north he must have seen the situation; that he was intoxicated at the time, and stupidly stepped on the crossing immediately before the collision; that the flangeway, into which he said he put his foot, was only three inches or less in width; that his shoe, on the trial, measured four, and that when the accident occurred he was wearing overshoes.

As to each of these claims, except the last two—the measurement of his shoe, and the fact that he also wore overshoes—there was evidence to the contrary. Elijah Sewell, a resident of Charleston, familiar with the crossing,

and in the employ of the company as brakeman and switch-man, speaking of the space between the rail and the plank, says : "The plank lays kind o' wedge fashioned with the rail, which made it five or six inches at the south end, and about three at the north;" and that he made the experiment and found that his foot would slip in there. Madigan, the roadmaster, says the rail on the south side was two and a half or three inches from the plank, but varied a little where the plank was worn from the flange of the wheel.

It appears, also, that there was a switch stand a few feet from the south end, and movable rails laid in the walk. Madigan says: "The two rails, I think, extend into the walk, probably a foot or so from the north side, and the movable rail from the south comes across the walk to meet that. The switch stand is at the south side of the walk. These rails are moved by the switch stand, back and forth across the sidewalk, and when the rails are moved to the south, so as to connect with the Y, it would leave a space on the north side of the south rail of six or seven inches."

Two undisputed facts, which may have turned the scale in the mind of the jury, were that the plaintiff was on the track and only his foot was injured. The wheel that crushed it was running on the south rail—the one he would have passed first—and it is not easy to account for his injury, except upon his own statement, that finding his foot fast, he threw his body backward and outward from the track. A man stupefied by liquor to the extent it is claimed he was, usually leans and lunges forward; and had he got so far as the south rail when the engine struck him, it seems most probable that his body would have fallen between the rails; and if his foot had not, in fact, been fast, that the falling of his body outward, before the collision, would have cleared it also. A further and fair inference would be that his injury was caused by the catching of his foot, and not by his attempt to cross the track, which would have been accomplished in a moment.

The jury might well consider this frog-like arrangement

of a movable rail, on a city sidewalk, faulty construction, and the leaving a space between the fixed rail and the planking, sufficient to catch and hold a foot, culpable negligence.

The record presents only questions of fact, and it is unnecessary to make further reference to the evidence in order to show that the verdict was fairly supported.

We see no material error in any ruling of the court. The judgment must therefore be affirmed.